Mr. Justice James
delivéred the opinion of the Court:
This Is a petition for a writ of habeas corpus. It states that on the 29th of September, 1892, the petitioner was tried in the Police Court of the District of Columbia on an information charging that he “ did engage in keeping a bar *140 room or tippling house where distilled or fermented liquors, wines or cordials were sold without then and there having a license for that purpose, contrary to and in violation of section i, article 16, of the Police Regulations of the District of Columbia,” and on the day ,and year aforesaid, after a trial by jury, was adjudged guilty of said charge and was sentenced to pay a fine of $100 and costs, and, in default thereof to be committed to the work-house of said District for the term of ninety days, and that thereupon he was, on the 13th day of September, 1892, in default of the payment of said fine -and costs, under the judgment aforesaid, committed into the custody of the intendent of the Washington work-house of the District of Columbia, and is now in the custody of the said intendent. The petitioner avers that section 1 of article 16 of the polioe regulations under which he was prosecuted, convicted and committed is without authority of law and invalid, and that the Police Court was without jurisdiction to proceed against him for any alleged violation of said section.
A certified record of the proceedings of the Police Court is annexed as a part of the petition. From this it appears that the petitioner as defendant in the Police Court filed a motion to quash the information, and a motion in arrest of judgment, but afterwards withdrew all motions in the case, and submitted himself for sentence.
The respondent sets forth in his answer as the cause of the petitioner’s detention the proceedings in the Police Court.
The police regulation on which the information in this case was founded is in the following words: “Section 1. No restaurant, bar room, sample room or tippling house where distilled dr fermented liquors, wines or cordials are sold shall be kept in the District of Columbia without a license therefor first had and obtained in accordance with' the provisions of existing law and the following regulations. And any person violating the provision of this section shall on conviction, be punished by a fine of not less than $100 nor *141 more than $250 for each and every offence, and in default of payment of such fine, such person shall be committed to the work-house of the city of Washington, in said District, for a period of not less than three nor more than eleven months.”
The commissioners of the District claim that authority to enact this regulation was conferred upon them by a “ joint resolution to regulate licenses to proprietors of theaters in the city of Washington * * * and for other purposes,” passed by Congress, February 26, 1892, which was in the following words: “Section x. That all licenses issued by the Commissioners of the District of Columbia to proprietors of theaters or other public places of amusement in th'e city of Washington, District of Columbia, and now in force be, and the same are hereby, terminated, unless the persons holding such licenses shall within ten days after due notice comply with such regulations as may be prescribed for the public safety by the Commissioners of the District of Columbia.
“Section 2. That the Commissioners of the District of Columbia are hereby authorized and empowered to make and enforce all such reasonable and usual police regulations in addition to those already made under the act of January 26, 1887, as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia.”
It has been assumed by the Commissioners that this grant included power to prohibit not the keeping of any bar room, but the keeping of a bar room without license, and to enforce such prohibition by fine and imprisonment.
In the construction of this grant of power the first question is whether it is affected by the reference to the act of January 26, 1887. We think, in the first place, that the words “ in addition to those already made,” under that act, necessarily mean “ those already made in accordance with,” &c., so that reference is actually made to the provisions of the act itself. In the next place, we must hold that this *142 description of the l'egulations yet to be made as being “in addition” to those already authorized ’must have been intended to have some effect, and we think they would be inoperative unless they contemplated an extension of the class of regulations already authorized. It is necessary, therefore, to consider the act of January 26, 1887. It enacted as follows:
“ That the Commissioners of the District of Columbia are hereby authorized and .empowered to malee, modify and enforce usual and reasonable police regulations in and for said District as follows:
“ First. For causing full inspection to be made' at any reasonable times of the places wherein the business of pawnbroking, junk dealing or second-hand clothing business may be carried on.
“Second. To regulate the storage of highly inflammable substances in the thickly populated portions of the District.
“ Third. To locate the places where licensed venders on streets and public places shall stand and change them as often as the public interests require, and to make all the necessary regulations governing their conduct on streets in relation to such business.
“Fourth. To make needful regulations for the orderly disposition of carriages or other vehicles assembled on streets oh public places and to require vehicles upon such streets a*id avenues, as they may deem necessary, to pass along the right side thereof.
“Fifth. To establish and regulate the charge to he made by owners of hacks and hackney carriages of any kind whatever.
“ Sixth. To prohibit conducting droves of animals upon such streets and avenues as they may deem necessary, to public safety and good order.
“ Seventh. To regulate the keeping and 'running at large of dogs and fowls.
“Eighth. To prohibit the deposit upon streets or sidewalks of fruit or any part thereof or other substances or *143 articles that might litter the same or cause injury to or impede pedestrians.
“ Ninth. To regulate or prohibit loud noises with horns, gongs or other instruments or loud cries upon the streets or public places, and to prohibit the use of any fireworks or explosives within such portions of the District as they may think necessary to public safety.
“Tenth. To regulate the■ movements of vehicles on the public streets or avenues for the preservation of order and protection of life and limb.”
. We have quoted these provisions at length because all of the regulations which they authorize relate to either life, limb, health, comfort or quiet and because the reference to them in the joint resolution has the effect to make them illustrations of what is meant in that resolution by regulations for the protection of “ lives, limbs, health, comfort and quiet.”
In the light of these illustrations the Commissioners would seem to be authorized to prohibit certain acts or conduct, by whomsoever done, because they would endanger life, limb, health, comfort or quiet, and on the same grounds to regulate the manner in which acts not prohibited shall be done. For example, they would be authorized to forbid the keeping open of any bar room after certain hours of the night, or to regulate the manner in which they should be conducted while open, and to impose proper penalties for the violation of such regulations. Both of these are matters in which public comfort, quiet or health may be concerned. But it is to matters which, by their own operation, may affect life, limb, health, comfort or quiet that this authority is strictly limited. It is with acts and conduct which, by whomsoever done, tend in themselves to impair one of these public interests that the Commissioners are authorized to deal. Therefore, befóte it can be held that the keeping of a bar room without license is a subject which falls within this power it must appear that such a bar room, although conducted in precisely the same manner with those that are *144 licensed, is, by reason of its want of license, distinguishable from the latter as to its effect on health, public comfort or quiet. That it is thus distinguishable even if it be conducted in the most orderly and wholesome manner is 'necessarily assumed by this regulation. This is the basis of the regulation, but in its actual form this basis is substantially ignored. In terms it provides simply a penalty for disregarding the license law and evading the license tax.
We cannot hold that the failure to obtain a license is an act which in itself is capable of affecting health, quiet or comfort. Undoubtedly a business which is carried on in defiance of law is likely to be carried on in an improper manner, but it is not at these improprieties that this regulation is aimed. As we have said, it deals only with the impropriety of carrying on this business at all, and in any manner, without first obtaining a license to do so.
So long as licenses for engaging in this kind of business are required it is to be greatly regretted that adequate penalties have not been provided for those who carry it on in defiance of law. It is known to this court judicially that what is begun in defiance of law is accompanied on all sides with such defiance. The mischief done by these unlicensed places, the corruption which they breed, the crimes which they cause, can hardly be estimated. The calendars of our courts are black with their results, but even these disclose only a part of it. The seat of government of a decent and law abiding people is disfigured and made disgusting by evils which, if not cured, could be diminished by legislation, and there is strong temptation to supply its absence by bold construction of law. But we are not allowed to cure unlawful conduct by assuming unlawful powers. Until this people shall give us power to cleanse their capital we can only suffer and be held responsible for evils we cannot cure.
It is with profound regret that we must hold the well intended regulation of the Commissioners to be invalid. The petitioner, who is held in custody under it, must therefore be discharged. An order will be made accordingly.